# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
No. 18-1473V
UNPUBLISHED

| | |
|---|---|
| KAYLEEN CRUMP WEED,<br><br>      Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>      Respondent. | Chief Special Master Corcoran<br><br>Filed: March 30, 2021<br><br>Special Processing Unit (SPU);<br>Decision Awarding Damages; Pain<br>and Suffering; Influenza (Flu)<br>Vaccine; Shoulder Injury Related to<br>Vaccine Administration (SIRVA) |

*David Charles Richards, Christensen & Jensen, P.C., Salt Lake City, UT,* for Petitioner.

*Jennifer Leigh Reynaud, U.S. Department of Justice, Washington, DC,* for Respondent.

## DECISION AWARDING DAMAGES[1]

On September 25, 2018, Kayleen Crump Weed filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleged that she suffered a shoulder injury related to vaccine administration ("SIRVA") as a result of an influenza ("flu") vaccine administered on September 26, 2016. Petition at 1. The case was assigned to the Special Processing Unit of the Office of Special Masters (the "SPU") – and although the parties agreed Petitioner should receive compensation for her injury, they could not resolve the damages to be awarded, so the matter was submitted for an SPU Motions Day hearing.

---

[1] Because this unpublished decision contains a reasoned explanation for the action in this case, I am required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002.  44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). **This means the decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

For the reasons described below, **I find that Petitioner is entitled to an award of damages in the amount of $106,375.00, representing** $**105,000.00 for actual pain and suffering, and $1,375.00 for past unreimbursable expenses.**

I.   **Relevant Procedural History**

A year after the petition's initiation, Respondent filed a status report on September 12, 2019, indicating that he was willing to engage in tentative discussions with Petitioner regarding a proffer of damages. ECF No. 35. Respondent then filed a Rule 4(c) Report on November 6, 2019 (ECF No. 38) conceding entitlement, and I issued a ruling finding Petitioner entitled to compensation later that day. ECF No. 39.

Over the next eight months, the parties attempted to informally resolve the issue of damages. *See generally* ECF Nos. 41, 44-47. During an August 3, 2020 status conference, however, the parties confirmed that they had reached an impasse concerning the appropriate amount of compensation to be awarded for Petitioner's pain and suffering (although they agreed on $1,375.00 as compensation for Petitioner's unreimbursable expenses). ECF No. 48. I subsequently set a briefing schedule to resolve this issue. ECF No. 50.

Petitioner filed her brief ("Br.") in support of damages on December 19, 2020 (ECF No. 54), and Respondent responded ("Opp.") on February 5, 2021. ECF No. 56. Petitioner filed a reply brief ("Rep.") on February 23, 2021. ECF No. 58. Prior to the completion of the parties' briefing, I proposed that the parties be given the opportunity to argue their positions at an SPU Motions Day hearing, at which time I would decide the disputed pain and suffering issue. ECF No. 55. The parties confirmed that they were amenable to this proposal (ECF No. 57), and the hearing was held on March 26, 2021. This written decision memorializes my resolution of the matter.[3]

II.   **Legal Standard**

Compensation awarded pursuant to the Vaccine Act shall include "[f]or actual and projected pain and suffering and emotional distress from the vaccine-related injury, an award not to exceed $250,000." Section 15(a)(4). Additionally, a petitioner may recover "actual unreimbursable expenses incurred before the date of judgment award such expenses which (i) resulted from the vaccine-related injury for which petitioner seeks

---

[3] At the end of the hearing, I issued an oral ruling from the bench on damages in this case. That ruling is set forth fully in the transcript from the hearing, which is yet to be filed with the case's docket. The transcript from the hearing is, however, fully incorporated into this Decision.

2

compensation, (ii) were incurred by or on behalf of the person who suffered such injury, and (iii) were for diagnosis, medical or other remedial care, rehabilitation . . . determined to be reasonably necessary." Section 15(a)(1)(B). The petitioner bears the burden of proof with respect to each element of compensation requested. *Brewer v. Sec'y of Health & Hum. Servs.*, No. 93-0092V, 1996 WL 147722, at *22-23 (Fed. Cl. Spec. Mstr. Mar. 18, 1996).

There is no mathematic formula for assigning a monetary value to a person's pain and suffering and emotional distress. *I.D. v. Sec'y of Health & Hum. Servs.*, No. 04-1593V, 2013 WL 2448125, at *9 (Fed. Cl. Spec. Mstr. May 14, 2013) ("[a]wards for emotional distress are inherently subjective and cannot be determined by using a mathematical formula"); *Stansfield v. Sec'y of Health & Hum. Servs.*, No. 93-0172V, 1996 WL 300594, at *3 (Fed. Cl. Spec. Mstr. May 22, 1996) ("the assessment of pain and suffering is inherently a subjective evaluation"). Factors to be considered when determining an award for pain and suffering include: 1) awareness of the injury; 2) severity of the injury; and 3) duration of the suffering. *I.D.*, 2013 WL 2448125, at *9 (quoting *McAllister v. Sec'y of Health & Hum. Servs.,* No 91-1037V, 1993 WL 777030, at *3 (Fed. Cl. Spec. Mstr. Mar. 26, 1993), *vacated and remanded on other grounds*, 70 F.3d 1240 (Fed. Cir. 1995)).

I may also consider prior pain and suffering awards to aid my resolution of the appropriate amount of compensation for pain and suffering in this case. *See, e.g.*, *Doe 34 v. Sec'y of Health & Hum. Servs.,* 87 Fed. Cl. 758, 768 (2009) (finding that "there is nothing improper in the chief special master's decision to refer to damages for pain and suffering awarded in other cases as an aid in determining the proper amount of damages in this case."). And I may of course rely on my own experience (along with my predecessor Chief Special Masters) adjudicating similar claims.[4] *Hodges v. Sec'y of Health & Hum. Servs.*, 9 F.3d 958, 961 (Fed. Cir. 1993) (noting that Congress contemplated the special masters would use their accumulated expertise in the field of vaccine injuries to judge the merits of individual claims).

Although pain and suffering in the past was often determined based on a continuum, as Respondent argues, that practice was cast into doubt by the Court several years ago. *Graves v. Sec'y of Health & Hum. Servs.,* 109 Fed. Cl. 579, 489-90 (2013). In *Graves*, Judge Merrow rejected a special master's approach of awarding compensation for pain and suffering based on a spectrum from $0.00 to the statutory $250,000.00 cap. Judge Merrow maintained that to do so resulted in "the forcing of all suffering awards into a global comparative scale in which the individual petitioner's suffering is compared to the

---

[4] From July 2014 until September 2015, the SPU was overseen by former Chief Special Master Vowell. For the next four years, until September 30, 2019, all SPU cases, including the majority of SIRVA claims, were assigned to former Chief Special Master Dorsey, now Special Master Dorsey. In early October 2019, the majority of SPU cases were reassigned to me as the current Chief Special Master.

most extreme cases and reduced accordingly." *Graves*, 109 Fed. Cl. at 590. Instead, Judge Merrow assessed pain and suffering by looking to the record evidence, prior pain and suffering awards within the Vaccine Program, and a survey of similar injury claims outside of the Vaccine Program. *Id.* at 595. Under this alternative approach, the statutory cap merely cuts off *higher* pain and suffering awards – it does not shrink the magnitude of *all* possible awards as falling within a spectrum that ends at the cap.

### III. Appropriate Compensation in this SIRVA Case

Ms. Weed's awareness of her injury is not disputed, leaving only its severity and duration to be considered. In determining an appropriate pain and suffering award, I have carefully reviewed the complete record in this case. I have also considered prior awards for pain and suffering in both SPU and non-SPU SIRVA cases, and relied upon my experience adjudicating such cases. However, my determination is ultimately based upon the specific circumstances of this case.

Citing three prior SPU damages determinations – *Nute*,[5] *Kelley*,[6] and *Reed*[7] – Ms. Weed requests an award of $160,000.00 in pain and suffering. Br. at 9-11; Rep. at 6-8. She asserts that the severity of her injury is comparable to the aforementioned SIRVA cases, with some factors (e.g., MRI findings) actually establishing a greater degree of impairment in the present matter. Br. at 11. Petitioner otherwise emphasizes that her need for shoulder surgery supports a pain and suffering award above the median proffer amount for SIRVA cases. Br. at 9-11; Rep. at 6-8. And she contends that the record evidence reflects that she continues to experience residual symptoms and limitations. Br. at 12; Rep. at 8-9.

Respondent, by contrast, submits that an award of $77,500.00 is appropriate for pain and suffering. Opp. at 1. Respondent asserts that the comparable cases cited by Petitioner are inapposite because Petitioner's clinical course was different. *Id.* at 6-7. However, Respondent cites no prior reasoned Vaccine Act decisions to support his proposed award – something I find significant, since damages awards issued within the Program (especially as set forth in reasoned decisions) are particularly persuasive evidence in determining appropriate compensation.

---

[5] *Nute v. Sec'y of Health & Human Servs.*, No. 18-140V, 2019 WL 6125008 (Fed. Cl. Spec. Mstr. Sept. 6, 2019) (awarding $125,000.00 in pain and suffering).

[6] *Kelley v. Sec'y of Health & Human Servs.*, No. 17-2054V, 2019 WL 5555648 (Fed. Cl. Spec. Mstr. Aug. 2, 2019) (awarding $120,000.00 in pain and suffering).

[7] *Reed v. Sec'y of Health & Human Servs.*, No. 16-1670V, 2019 WL 1222925 (Fed. Cl. Spec. Mstr. Feb. 1, 2019) (awarding $160,000.00 in pain and suffering).

Pursuant to my oral ruling on March 26, 2021 (which is fully adopted herein), **I find that $105,000.00 represents a fair and appropriate amount of compensation for Petitioner's actual pain and suffering.**[8] My decision has several bases.[9]

The overall severity of the injury at issue is not high enough to warrant the magnitude of the award requested by Petitioner. It is true Petitioner's initial post-vaccination symptoms were severe, as evidenced by communications made by Petitioner to her physician only one week following her vaccination regarding her arm pain. Ex. 2 at 16. Furthermore, at allergist and primary care appointments approximately one month after vaccination, Petitioner was noted to be in significant pain that she rated as "9" out of "10." *Id.* at 18, 23-24. During this period, she was prescribed prednisone and Percocet for symptom relief. *Id.* at 17, 20, 24-26.

I also note that an MRI of Petitioner's shoulder completed on November 1, 2016 revealed significant pathology, including a full-thickness tear of the supraspinatus tendon most prominent at the attachment of the anterior fibers of the supraspinatus tendon on the greater tuberosity, as well as tendinopathy and partial thickness tearing of the infraspinatus tendon and subscapularis tendon, greatest at the infraspinatus tendon. Ex. 3 at 1-2.

Petitioner subsequently underwent an orthopedic evaluation on November 9, 2016, during which she reported shoulder pain (rated "8" out of "10"), weakness, and decreased range of motion. Ex. 4 at 1-3. On examination, Petitioner presented with active forward flexion of 180/70 degrees; passive forward flexion of 90 degrees; external rotation of 45 degrees bilaterally; and internal rotation to T12/left buttock. *Id.* at 1. Her orthopedist recommended surgical intervention. *Id.* at 2. The following day, on November 10, 2016 (less than two months post-vaccination), Petitioner underwent an arthroscopic rotator cuff repair and subacromial decompression procedure. *Id.* at 5-7.

Significantly, however, Petitioner's post-surgical medical records suggest she made a strong and relatively quick recovery (as compared to other SIRVA cases involving surgical intervention). Over the subsequent four months, Petitioner underwent nine physical therapy appointments (less than many similarly-situated petitioners), and she

---

[8] In the joint status report filed on February 11, 2021 (ECF No. 57), it was noted that Petitioner was seeking a "determination of past and future pain and suffering in the amount of $160,000.00," whereas Petitioner's briefing more generally proposes $160,000.00 in pain and suffering without delineating past or future damages components. However, I do not find the overall evidence preponderates in favor of an award for future pain and suffering. My award for actual pain and suffering has nevertheless incorporated Petitioner's alleged residual symptoms and limitations, to the extent they are supported by the available record evidence.

[9] A more complete recitation of the facts can be found in the Petition, Respondent's Rule 4(c) Report, and the parties' briefing.

was generally recorded as having only mild levels of pain with improved functional capacity. Ex. 5 at 1-36. At her final physical therapy appointment on March 20, 2017, Petitioner reported only "mild" shoulder discomfort at night and "mild" tightness with grabbing a seatbelt. *Id.* at 29. She rated her pain as "3" out of "10" and was observed to have mild range of motion deficits and weakness. *Id.* at 29, 34. Petitioner was discharged to a home exercise program after meeting all of her goals. *Id.* at 31.

At her final orthopedic appointment on March 22, 2017 (approximately six months post-vaccination), Petitioner was further noted to be feeling "really good" and "moving the shoulder well." Ex. 4 at 12. On examination, Petitioner presented with nearly full range of motion and good resistance. *Id.* She was advised to exercise caution about lifting objects for at least two months. *Id.* Thereafter, the record suggests that Petitioner did not receive any subsequent *active* treatment for her shoulder condition. At a primary care appointment on July 17, 2017 (approximately 10 months post-vaccination), Petitioner was noted to be "[s]till recovering from left shoulder surgery." Ex. 2 at 33. Nevertheless, she also indicated that she was "doing lots of gardening," walking, hiking, and planning to resume swimming. *Id.*

In her affidavit, Petitioner has alleged continuing pain and difficulty performing activities of daily living. Ex. 1. But based on her medical records and the lack of any subsequent treatment after July 17, 2017, I find that Petitioner was largely recovered by that date – approximately 10 months post-vaccination. My award for pain and suffering has accounted for Petitioner's affidavit as well as the cumulative record evidence documenting her pain and functional limitations (both pre- and post-surgery), her MRI findings, her November 2016 arthroscopic procedure, her physical therapy, and her overall treatment course and duration.

I also note that the other comparable SIRVA decisions Petitioner cites are largely distinguishable. Although it is true the petitioners in these cases also underwent shoulder surgeries, their treatment courses reflect that they received cortisone injections, underwent more physical therapy, and had longer injury durations. *See Nute*, 2019 WL 6125008, at *1-5; *Kelley*, 2019 WL 5555648, at *1-4; *Reed*, 2019 WL 1222925, at *2-9. The overall facts of this case in comparison suggest a less severe SIRVA, and hence a lower pain and suffering award.

The facts in this case are instead, in my reasoned determination, most analogous to those in *Wilt v. Sec'y of Health & Human Servs.*, No. 18-446V, 2020 WL 1490757 (Fed. Cl. Spec. Mstr. Feb. 24, 2020) (awarding $110,000.00 in pain and suffering). As in this case, the *Wilt* petitioner sought medical treatment very soon after vaccination (five days) and was found on MRI to have a full-thickness tendon tear. *Wilt,* 2020 WL 1490757, at *2, 5. The *Wilt* petitioner similarly underwent a shoulder surgery for her SIRVA, and she

6

was recorded as having a strong post-surgical recovery with mild pain and functional limitations. *Id.* at *5-8. Moreover, the treatment duration in both cases was approximately 10 months. *Id.* at *2-8.

Although the two cases are similar, I find that a slightly lower pain and suffering award is warranted in this matter. Specifically, I note that the *Wilt* petitioner received more physical therapy (20 sessions vs. 9 sessions) and her shoulder surgery involved additional procedures (along with an arthroscopic rotator cuff repair and subacromial decompression, the *Wilt* petitioner underwent biceps tenotomy and major debridement of the shoulder). *Wilt,* 2020 WL 1490757, at *3-8. The above differences support a somewhat lower award for Petitioner's pain and suffering in the present case.

### IV.    Conclusion

For all of the reasons discussed above and based on consideration of the record as a whole, **I find that $105,000.00 represents a fair and appropriate amount of compensation for Ms. Weed's actual pain and suffering.[10] I also find that Petitioner is entitled to $1,375.00 for past unreimbursable expenses.**

Accordingly, **I award the following:**

- **A lump sum payment of $106,375.00 in the form of a check payable to Petitioner.** This amount represents compensation for all remaining damages that would be available under Section 15(a).

The Clerk of the Court is directed to enter judgment in accordance with this decision.[11]

**IT IS SO ORDERED.**

                                                   **s/Brian H. Corcoran**
                                                   Brian H. Corcoran
                                                   Chief Special Master

---

[10] Since this amount is being awarded for actual, rather than projected, pain and suffering, no reduction to net present value is required. *See* § 15(f)(4)(A); *Childers v. Sec'y of Health & Hum. Servs.*, No. 96-0194V, 1999 WL 159844, at *1 (Fed. Cl. Spec. Mstr. Mar. 5, 1999) (citing *Youngblood v. Sec'y of Health & Hum. Servs.*, 32 F.3d 552 (Fed. Cir. 1994)).

[11] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.